THE ECCLESIASTICAL SOCIETY OF SOUTH-FARMS, IN LITCHFIELD, v. GEORGE BECKWITH.

ACTION for breach of covenant.   The declaration was, that the plaintiffs having called the defendant, in the customary way of calling candidates for the ministry, to settle with them as a gospel minister; and he having covenanted and agreed to the same; for the better understanding and mutual advantage of the parties, at Litchfield, on the 22d day of October, 1772, the plaintiffs and defendant covenanted and agreed, among other things, as follows, viz.:  " The church and society

(meaning the church formed in said society, and the in-habitants of said society) engage to support Mr. Beckwith, during his natural life, and to give him £135 on the day of his installation; and if not paid at that time, to pay him the interest thereof till paid. Also to pay him £65 more, within two years from said time, and if not then paid, to pay him the interest thereof till paid. All this, the said church and society agree to pay Mr. Beckwith as a settlement. And the said Mr. Beckwith, on his part doth hereby agree to accept the above offer, and engage to become the minister and pastor of said church upon their present establishment; and to serve said church and society in the gospel ministry, as God shall give him ability, during his natural life; and not to vary or go off from said establishment, without a majority of said church and society collectively, except he forfeit (if it be immediately) his whole settlement; if after but one year from the time of his settlement, then £190 thereof; if after two years, then £180 — and so on in the same proportion, according to the number of years he continues to be their pastor, till twenty years are expired, if God please to spare his life, and continue said near relation till after that time, when after that there shall be no forfeiture of settlement." Which covenant was well executed under the hands and seals of a committee lawfully authorized by said church and society, and by the defendant, dated the 22d day of October, 1772; as appears by said covenant ready in court to be shown.

And the plaintiffs say, the establishment which the defendant in said covenant agrees and promises not to vary or go off from, without the majority of said church and society,

under the penalty of forfeiting, as is mentioned in said covenant, was understood and meant by the parties at said time, to be the establishment or mode of church discipline, then practiced by said church and society; which was, as the defendant very well knew, the same establishment adopted in general by Presbyterians, and Congregational churches in the state of Connecticut, commonly called Saybrook-Platform establishment, or form of church discipline. And that said £135 and said £65 promised to the defendant in said covenant, was meant lawful money, and in lawful money was actually paid to the defendant by the plaintiffs, agreeably to the covenant aforesaid. Yet, the defendant, not ignorant of the premises, and disregarding his covenant and agreement, on the 5th day of January, 1773, knowing he was liable to censure for some of his conduct, and being called upon by the association for Litchfield county, to answer for his said conduct. To obey which request of the association, the defendant was obliged by the known constitution, and establishment of said church, and all the churches adopting Saybrook-Platform, for a mode of discipline. And for the purpose of avoiding a scrutiny of his conduct, by said association, privately convened the members of said church, and without the knowledge, or consent of the inhabitants of said society, the defendant and majority of said church, passed a number of votes, or propositions, respecting the mode of church discipline, for their future practice; which they attempted to support and countenance by many scripture proofs, totally subversive, and directly contrary to the plan of church discipline, formerly adopted by said church; and directly contrary to the plan or mode of church government, which was

.meant and intended by the parties in said covenant, not to be varied or altered by the defendant, without his incurring the .forfeitures mentioned in said covenant. Particularly, the plaintiffs say, the majority of said church, under the influence and instigation of the defendant, and to avoid a scrutiny of his conduct as aforesaid — voted in, agreed to, and have ever since acted upon, until the defendants dismission from said .society, among many propositions, the following, viz.:

" That all powers, authorities, capacities, and privileges, which in the holy scriptures are said to belong, or appertain to the church of Christ, do belong to every particular church; and that every such particular church is responsible to Jesus Christ for the exercise of such powers, abilities and privileges, to them by him annexed; and consequently by divine con-.stitution are inherent and essential, and so can never be transferred or assigned over to others. And therefore it is the interest and essential right of every particular church, to .choose its own pastor, and all means requisite and necessary to render such a choice effectual. Also to exercise discipline .over its own members, according to the will of Christ; and that no other church, consociation of churches, or ecclesiastical council whatever, has, or can have, any right authoritatively to intermeddle with matters of this kind. And that therefore, the claims made by the association of Litchfield county, to examine all licensed candidates for the ministry before they may give an answer to an invitation, or accept an invitation to the pastoral office in said county; also the late claim of the consociation of said county, to exercise an exclusive right of ordaining to the pastoral office; and .authoritatively and decisively determine matters ecclesiastical

The Ecclesiastical Society, etc., v. Beckwith.

within said county, is, in the opinion of this church, an infringement upon christian liberty, and inconsistent with the simplicity of the gospel, and the rights of churches; and that by the laws of Jesus Christ, this church is indispensably obliged not to submit to any authority, claimed as aforesaid. And that it is the opinion of the church, upon mature deliberation, that the articles of agreement, (as they are called) considered as a system, said to be entered into by the churches in Litchfield county, ought never to be, or to have been considered as a rule to be observed by this church." As by said vote or proposition ready in court to be produced, may appear; dated January the 5th day, A. D. 1773.

Which conduct of the defendant, in varying, going off from, and entirely altering the establishment of said church, as to discipline, and without the knowledge or consent of said society, was a direct violation of his covenant with the plaintiffs, as mentioned above. And by which conduct, the plaintiffs say, he has forfeited his settlement, according to the tenor of said covenant; and by which means they are entitled by law to recover of the defendant, as they say, £500 lawful money.

To this declaration, Mr. Adams and Mr. Canfield, for the defendant, demurred generally; under which they took the following exceptions:

1. The declaration does not set forth with sufficient certainty, what the constitution of the church was, so as to admit of proof or disproof; it is only stated by way of innuendo.

2. That the whole matter is merely spiritual. It is only whether the defendant has taught the best scripture doctrine; which is a matter the court can never take cognizance of.

3. The defendant only acted as moderator of the church meeting; and the votes alleged as a breach of his covenant, were the act of the church, and not his act, or imputable to him as a sole transaction; which only could be a breach on his part; for no act of the church can be imputed to the defendant, either as a breach, or fulfilment of the covenant.

4. There is nothing stated in the declaration which can operate as a rule of certainty, whereby damages may be given; for it is nowhere averred at what time the defendant was ordained or installed, or how long he continued in the performance of his covenants.

Mr. Reeve and Mr. Tracy, for the plaintiffs:

In answer to the first exception, the declaration expressly avers, that the constitution of church discipline, meant and understood by the contracting parties, and which the defendant covenanted not to deviate from, was the Saybrook-Platform.   That is a system of church government, which has become a part of the laws of the land, and therefore can need no further definition.

2. This cannot be considered as an ecclesiastical matter; the contract and covenant is wholly civil, and it is as. easy to determine, whether the defendant has acted in conformity to the principles of the church constitution, as to determine any other fact.

3. The votes stated by the plaintiffs, amount to a direct declaration of independence.   It is averred that the defendant procured the church, to pass those votes which contain a system totally repugnant to the Saybrook-Platform.   The activity of the defendant to procure those votes, is a single act alleged against him capable of being traversed.   And it is further averred that he immediately went on, and has ever since practiced on those principles.

4. The breach of the covenant must have reference to the making of it. The instant the covenant was completed, they became bound to pay him so much money, he became their minister, and was obliged to practice by the rules and principles pointed out by the contracting parties. Any deviation from those rules, after that, was a breach of the covenant.

By the whole Court. The declaration is insufficient. Because, 1st, The rule of damages is uncertain. The claim is, that the defendant should repay, as a forfeiture, a part of his settlement, proportioned to the time from his installation to a certain subsequent period, when he is supposed to have broken his covenant; but when his installation took place, doth not appear from the declaration.

2. It doth not appear that the covenant hath been broken. The covenant was, on the part of the defendant, that he should be the minister of said church, as then established, (which is said to have been upon the Saybrook-Platform) and " not vary or go off from said establishment, without a major part of the church and society." They might, if they saw fit, release him or alter their establishment; but otherwise he was bound by this covenant to continue their minister, and to conform to the rules and discipline of said church, as then practiced and established, under certain penalties. This was the extent of his covenant; and of this, it doth not appear that he has, in any point failed. It was no breach, on his part, that the church, for whose conduct he had not stipulated, and whose proceedings he had not power to direct or negate, passed certain votes, and declared certain claims of the consociated churches in Litchfield county, unscriptural. How far those claims were warranted by the Saybrook-Platform, or how far the church, by declaring against them, has

affected its constitution, is not material; since it doth not appear that the defendant has ever refused to submit to, or administer discipline in said church, or to perform the other duties of a pastor thereof, according to the rules established and practiced therein, at the time of his settlement. The averment, that ever since the aforesaid declaration, he has practiced agreeably thereto, is too general. It is not traversable. Nor can it appear to the court, unless the facts, or some of them, are specially set forth, that the conduct of the defendant, has amounted to a breach of his covenant.